**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| FLEET CONNECT SOLUTIONS LLC, | |
| Plaintiff, | Civil Action No. 2:23-cv-00555-JRG-RSP |
| v. | |
| LKQ CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Fleet Connect Solutions LLC ("FCS" or "Plaintiff") files this First Amended Complaint against LKQ Corporation ("LKQ" or "Defendant") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.     This is a patent infringement action to stop Defendant's infringement of the following United States Patents (collectively, the "Asserted Patents") issued by the United States Patent and Trademark Office ("USPTO"), which are available at the links below, respectively:

| | U.S. Patent No. | Title | Available at |
|---|---|---|---|
| A. | 6,429,810 | Integrated Air Logistics System | USPTO.GOV, https://patentcenter.uspto.gov/applications/09774547, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6429810 |
| B. | 6,549,583 | Optimum Phase Error Metric For OFDM Pilot Tone Tracking In Wireless LAN | USPTO.GOV, https://patentcenter.uspto.gov/applications/09790429, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583 |
| C. | 7,742,388 | Packet Generation Systems and Methods | USPTO.GOV, https://patentcenter.uspto.gov/applications/11185665, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388 |

|   | U.S. Patent No. | Title | Available at |
|---|---|---|---|
| D. | 6,647,270 | Vehicle Talk | USPTO.GOV, https://patentcenter.uspto.gov/applications/09659074, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270 |
| E. | 7,747,291 | Wireless Communication Method | USPTO.GOV, https://patentcenter.uspto.gov/applications/12546650, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7747291 |
| F. | 8,494,581 | System And Methods For Management Of Mobile Field Assets Via Wireless Handheld Devices | USPTO.GOV, https://patentcenter.uspto.gov/applications/12547363, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581 |

2.     Plaintiff seeks injunctive relief and monetary damages.

## PARTIES

3.     Plaintiff is a limited liability company formed under the laws of Texas with its registered office address located in Austin, Texas.

4.     Defendant is a corporation organized under the laws of the State of Delaware with its principal place of business located at 500 West Madison Street, Suite 2800, Chicago, Illinois 60661.

5.     Defendant's registered agent for service is Corporate Creations Network, Inc., 1521 Concord Pike, Suite 201, New Castle, Delaware 19803.

## JURISDICTION AND VENUE

6.     FCS repeats and re-alleges the allegations in Paragraphs 1-5 as though fully set forth in their entirety.

7.     This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

8.      Venue is proper against Defendant in this District pursuant to 28 U.S.C. § 1400(b) and 1391(c) because it has maintained established and regular places of business in this District and has committed acts of patent infringement in the District from those regular and established places of business.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017). *See* Figures 1-3 below.  Defendant offers products and services, including through the use of Accused Products, and conducts business in this District.  For example, and as depicted below, Defendant promotes, advertises, and provides its services within this District using the Accused Products.



Figure 1
(source: LKQ CORP, https://www.lkqcorp.com/blog/location/lkq-auto-parts-of-east-texas-whitehouse/)



Figure 2
(source: GOOGLE MAPS, https://www.google.com/maps)



Figure 3
(source: GOOGLE MAPS, https://www.google.com/maps)

9.      Defendant is subject to this Court's specific and general personal jurisdiction under

due process due at least to Defendant's substantial business in this judicial district, including:  (i)

at least a portion of the infringements alleged herein; (ii) regularly transacting, doing, and/or

soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue

from goods and services provided to individuals in Texas and in this District; (iii) having an interest

in, using or possessing real property in Texas and this District; (iv) and having and keeping

personal property in Texas and in this District.

10.      Specifically, Defendant intends to do and does business in, has committed acts of infringement in, and continues to commit acts of infringement in this District directly, through intermediaries, by contributing to and through its inducement of third parties, and offers its products or services, including those accused of infringement here, to customers and potential customers located in this District.

11.      Defendant maintains regular and established places of business in this District at 13681 Sydney Road, Whitehouse, Texas 75791.

12.      In addition, to conduct this business, Defendant employs a number of individuals within this District.   These individuals' employment with Defendant is conditioned upon and based on their residence and continued residence within the District to further the specific infringing business activities of Defendant within the District.

13.      Defendant also leases, owns, stores, services, and/or operates real and personal property including, but not limited to, vehicles and other equipment, and provides and funds office space and equipment, vehicles, and other equipment to its employees, exclusive and non-exclusive contractors, agents, and affiliates, within this District for the specific purposes of offering, provide, and/or support its infringing products and services within this District.

14.      Defendant's business specifically depends on employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., being physically present at places in the District, and Defendant affirmatively acted to make permanent operations within this District to service its customers.  *See In re Cray Inc.*, 871 F.3d 1355, 1365–66 (Fed. Cir. 2017) (*citing In re Cordis Corp.*, 769 F.2d 733, 736 (Fed. Cir. 1985)).   Defendant employs and contracts with those employees, exclusive and non-exclusive contractors, agents, and affiliates, etc., with the specific requirement that those individuals and entities maintain a presence in the District to service

customers within the District.  At least through these employees, Defendant does its business in this District through a permanent and continuous presence.  *See In re Cordis Corp.*, 769 F.2d 733, 737(Fed. Cir. 1985).

15.     Defendant commits acts of infringement from its places of business in this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

## THE ACCUSED PRODUCTS

16.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

17.     Defendant uses, causes to be used, provides, supplies, or distributes one or more fleet management and tracking solutions, including, but not limited to, Donlen's DriverPoint® Telematics, including the FleetWeb® fleet management platform, FleetWeb Dashboard, the DonlenDriver app, FleetWeb® Mobile app, AssetCheck, Advanced Diagnostics, and electronic logging devices, and Wheels' Vehicle Telematics, including the Wheels Mobile Assistant, FleetView Dashboard, FleetView Mobile app, Wheels Mobile app, DriverView, and electronic logging devices, FleetWeb, and associated hardware, software, and functionality, and/or Geotab telematics devices or "Geotab GO Devices" (any and current, predecessor, and successor models, names, or releases) with MyGeotab Portal, Enterprise Fleet Management Portal, EV Suitability Assessment (EVSA) instrumentalities, Software Development Kits ("SDKs"), Fleet Planning Toolkits, eFleets client portal, and eFleets Mobile app (collectively, the "Accused Products"). *See* Figures 4 and 5 below.



Figure 4
(source: Yogi Shivdasani, VP, NA Supply Chain, LKQ Corporation, *Client Testimonials*,
DONLEN, https://www.donlen.com (last visited Nov. 29, 2023))



Figure 5
(source: FLEET FINANCIALS, https://www.fleetfinancials.com/157524/2017-fleet-executive-of-the-year-award-nominees (last updated July 7, 2017) (last visited Nov. 29, 2023))

18.    On information and belief, Defendant, using the Accused Products, performs wireless communications and methods associated with performing and/or implementing wireless communications including, but not limited to, wireless communications and methods pursuant to various protocols and implementations, including, but not limited to, Bluetooth, IEEE 802.11, and LTE protocols and various subsections thereof, including, but not limited to, 802.11ac, 802.11b, and 802.11n.

19.     On information and belief, Defendant, using the Accused Products, performs singular value decomposition of estimated channel matrices, transmit data over various media, compute time slot channels, generate packets for network transmissions, perform or cause to be performed error estimation in orthogonal frequency division multiplexed ("OFDM") receivers, and various methods of processing OFDM sybmols.

20.     Defendant, using the Accused Products, also tracks, analyzes, and reports vehicle maintenance needs and driver warnings associated with a vehicle, tracks or causes to be tracked vehicle locations, and allows for communication between a system administrator and a remote unit to communicate, *e.g.*, advisory notifications.

21.     For these reasons and the additional reasons detailed below, the Accused Products practice at least one claim of each of the Asserted Patents.

**COUNT I:   INFRINGEMENT OF U.S. PATENT NO. 6,429,810**

22.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

23.     FCS owns all substantial rights, interest, and title in and to U.S. Patent No. 6,429,810 (the "'810 patent"), including the sole and exclusive right to prosecute this action and enforce the '810 patent against infringers and to collect damages for all relevant times.

24.     The USPTO duly issued the '810 patent on August 6, 2002, after full and fair examination of Application No. 09/774,547 which was filed January 31, 2001. *See* '810 patent at 1.

25.     The claims of the '810 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of logistics and tracking

systems.

26.     The written description of the '810 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

27.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '810 patent.

28.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '810 patent.  For example, Defendant performs a method of providing container status information to a user.   The method includes attaching an electronic communications unit to a shipping container; generating a transaction identification code, wherein said transaction identification code is specific to said shipping container and specific to at least one user transaction; initiating a status inquiry utilizing said transaction identification code, wherein said user performs said initiating step; receiving said status inquiry by a ground communications system; transmitting said status inquiry to said electronic communications unit by said ground communications system; obtaining a status information response by said electronic communications unit; transmitting said status information response to said ground communications system by said electronic communications unit; and forwarding said status information response to said user by said ground communications system.

29.     More specifically, Defendant has infringed the claims of the '810 patent as detailed in Attachment A to the Preliminary Infringement Contentions served on Defendant on March 11, 2024, which are incorporated by reference.

30.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

### COUNT II:  INFRINGEMENT OF U.S. PATENT NO. 6,549,583

31.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

32.     FCS owns all substantial rights, interest, and title in and to U.S. Patent No. 6,549,583 (the "'583 patent"), including the sole and exclusive right to prosecute this action and enforce the '583 patent against infringers and to collect damages for all relevant times.

33.     The USPTO duly issued the '583 patent on April 15, 2003, after full and fair examination of Application No. 09/790,429 which was filed February 21, 2001.  *See* '583 patent at 1.

34.     The claims of the '583 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting error estimation methods.

35.     The written description of the '583 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

36.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to

collect pre-filing damages for the full period allowed by law for infringement of the '583 patent.

37.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '583 patent.  For example, Defendant, using the Accused Products, performs a method of pilot phase error estimation in an orthogonal frequency division multiplexed (OFDM) receiver.  The method includes determining pilot reference points corresponding to a plurality of pilots of an OFDM preamble waveform; and estimating an aggregate phase error of a subsequent OFDM data symbol relative to the pilot reference points using complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points; wherein the estimating step comprises performing a maximum likelihood-based estimation using the complex signal measurements corresponding to each of the plurality of pilots of the subsequent OFDM data symbol and the pilot reference points.

38.     More specifically, Defendant has infringed the claims of the '583 patent as detailed in Attachment B to the Preliminary Infringement Contentions served on Defendant on March 11, 2024, which are incorporated by reference.

39.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 7,742,388

40.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

41.     FCS owns all substantial rights, interest, and title in and to U.S. Patent No. 7,742,388 (the "'388 patent"), including the sole and exclusive right to prosecute this action and enforce the

'388 patent against infringers and to collect damages for all relevant times.

42.     The USPTO duly issued the '388 patent on June 22, 2010, after full and fair examination of Application No. 11/185,665 which was filed July 20, 2005. *See* '388 patent at 1.

43.     The claims of the '388 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting systems and methods of generating packets in a digital communications system.

44.     The written description of the '388 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

45.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '388 patent.

46.     Defendant has directly infringed and continues to directly infringe one or more claims of the '388 patent by manufacturing, providing, supplying, using, distributing, selling, or offering to sell the Accused Products.

47.     Defendant has directly infringed and continues to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '388 patent.  For example, Defendant performs a method including generating a packet with a size corresponding to a protocol used for a network transmission, wherein the packet comprises a preamble having a first training symbol and a second training symbol.  The method further includes increasing the size of the packet by adding subcarriers to the second training symbol of the packet to produce an extended packet,

wherein a quantity of subcarriers of the second training symbol is greater than a quantity of subcarriers of the first training symbol; and transmitting the extended packet from an antenna.

48.     More specifically, Defendant has infringed the claims of the '388 patent as detailed in Attachment C to the Preliminary Infringement Contentions served on Defendant on March 11, 2024, which are incorporated by reference.

49.     Since at least the time it was served with the original complaint, Defendant has indirectly infringed and continues to indirectly infringe the '388 patent by inducing others to directly infringe the '388 patent. Defendant has induced and continues to induce customers and end-users, including, but not limited to, Defendant's customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '388 patent by providing or requiring use of the Accused Products. Defendant has taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '388 patent, including, for example, claim 1. Such steps by Defendant have included, among other things, advising or directing customers, personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendant has been performing these steps, which constitute induced infringement with the knowledge of the '388 patent and with the knowledge that the induced acts constitute infringement. Defendant has been aware that the normal and customary use of the Accused Products by others would infringe the '388 patent. Defendant's inducement is ongoing.

50.     Since at least the time it was served with the original complaint, Defendant has indirectly infringed and continues to indirectly infringe by contributing to the infringement of the

'388 patent.  Defendant has contributed and continues to contribute to the direct infringement of the '388 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '388 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '388 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendant's contributory infringement is ongoing.

51.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus have been willfully blind of FCS's patent rights.

52.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

53.     Defendant's infringement of the '388 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

54.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

55.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '388 patent.  Defendant's actions have interfered with and will interfere with FCS's ability to license technology.  The balance of hardships favors FCS's ability

to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its

right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 6,647,270

56.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set

forth in their entirety.

57.     FCS owns all substantial rights, interest, and title in and to U.S. Patent No. 6,647,270

(the "'270 patent"), including the sole and exclusive right to prosecute this action and enforce the

'270 patent against infringers and to collect damages for all relevant times.

58.     The USPTO duly issued the '270 patent on November 11, 2003, after full and fair

examination of Application No. 09/659,074 which was filed September 11, 2000.  *See* '270 patent

at 1.

59.     The claims of the '270 patent are not directed to an abstract idea and are not limited to

well-understood, routine, or conventional activity.  Rather, the claimed inventions include

inventive components that improve upon the function and operation of voice and data

communications systems.

60.     The written description of the '270 patent describes in technical detail each limitation

of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-

conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of

the invention.

61.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to

collect pre-filing damages for the full period allowed by law for infringement of the '270 patent.

62.     Defendant has directly infringed the '270 patent by manufacturing, providing,

supplying, using, distributing, selling, or offering to sell the Accused Products.

63.    Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '270 patent.  For example, Defendant provides a system for transmitting voice or data communications comprising a plurality of data packets between a plurality of remote units, each remote unit having a unique identifier; whereby each remote unit includes:  a memory for storing a unique identifier; a transceiver for receiving a wireless communication and downconverting said received communication from RF to baseband, and for upconverting a baseband communication to RF for transmission as a transmit wireless communication; a GPS receiver, for outputting a position signal; a microprocessor, for receiving said position signal and said downconverted communication, and for generating said baseband communication; whereby said microprocessor generates said baseband communication by constructing said data packets from a plurality of data fields, including sender information and receiver information, whereby said sender information includes: the unique identifier of the sender, and information derived from said position signal; and whereby said receiver information includes: the address of the desired remote unit.

64.    More specifically, Defendant has infringed the claims of the '270 patent as detailed in Attachment D to the Preliminary Infringement Contentions served on Defendant on March 11, 2024, which are incorporated by reference.

65.    Since at least the time it was served with the original complaint, Defendant has also indirectly infringed the '270 patent by inducing others to directly infringe the '270 patent. Defendant has induced customers and end-users, including, but not limited to, its customers, employees, partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents, the '270 patent by providing or requiring use of the Accused Products.  Defendant has

taken active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '270 patent, including, for example, claim 1.  Such steps by Defendant included, among other things, advising or directing personnel, contractors, or end-users to use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendant has performed these steps, which constitute induced infringement with the knowledge of the '270 patent and with the knowledge that the induced acts constituted infringement.  Defendant was aware that the normal and customary use of the Accused Products by others would infringe the '270 patent.

66.     Since at least the time it was served with the original complaint, Defendant has also indirectly infringed by contributing to the infringement of the '270 patent.  Defendant has contributed to the direct infringement of the '270 patent by its customers, personnel, and contractors.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '270 patent, including, for example, claim 1.  The special features constitute a material part of the invention of one or more of the claims of the '270 patent and are not staple articles of commerce suitable for substantial non-infringing use.

67.     Furthermore, on information and belief, Defendant has a policy or practice of not reviewing the patents of others, including instructing its employees to not review the patents of others, and thus has been willfully blind of FCS's patent rights.

68.     Defendant's actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

69.     Defendant's infringement of the '270 patent has been willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

70.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT V:  INFRINGEMENT OF U.S. PATENT NO. 7,747,291**

71.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

72.     FCS owns all substantial rights, interest, and title in and to U.S. Patent No. 7,747,291 (the "'291 patent"), including the sole and exclusive right to prosecute this action and enforce the '291 patent against infringers and to collect damages for all relevant times.

73.     The USPTO duly issued the '291 patent on June 29, 2010, after full and fair examination of Application No. 12/546,650 which was filed August 24, 2009.  *See* '291 patent at 1.

74.     The claims of the '291 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems for mobile vehicle-based communications systems utilizing short-range communication links.

75.     The written description of the '291 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the time of the invention.

76.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '291 patent.

77.     Defendant has directly infringed the '291 patent by using, providing, supplying, or distributing the Accused Products.

78.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 1 of the '291 patent.

79.     For example, upon information and belief, Defendant uses the Accused Products to perform a method of wirelessly interconnecting a vehicle with a mobile unit and a website.  The method includes broadcasting a short range communication link from the vehicle comprising a transceiver to the mobile unit wherein the short range communication link is a first communication link; determining by the vehicle if the first communication link with the mobile unit is authorized; establishing a second communication link between the vehicle and the website; receiving a communication from the mobile unit, by the vehicle, the communication comprising information to be stored at the website; uploading the communication from the vehicle to the website; receiving by the vehicle a confirmation that the communication was received by the website; and sending the confirmation from the vehicle to the mobile unit.

80.     More specifically, Defendant has infringed the claims of the '291 patent as detailed in Attachment E to the Preliminary Infringement Contentions served on Defendant on March 11, 2024, which are incorporated by reference.

81.     Since at least the time it was served with the original complaint, Defendant has also indirectly infringed one or more claims of the '291 patent by inducing others to directly infringe

said claims.  Defendant has induced end-users, including, but not limited to, its employees,

partners, or contractors, to directly infringe, either literally or under the doctrine of equivalents,

the '291 patent by providing or requiring use of the Accused Products.  Defendant took active

steps, directly or through contractual relationships with others, with the specific intent to cause

them to use the Accused Products in a manner that infringes one or more claims of the '291 patent,

including, for example, Claim 1.  Such steps by Defendant included, among other things, advising

or directing personnel, contractors, or end-users to use the Accused Products in an infringing

manner; advertising and promoting the use of the Accused Products in an infringing manner; or

distributing instructions that guide users to use the Accused Products in an infringing manner.

Defendant performed these steps, which constitute induced infringement with the knowledge of

the '291 patent and with the knowledge that the induced acts constitute infringement.  Defendant

was aware that the normal and customary use of the Accused Products by others would infringe

the '291 patent.  Defendant's inducement is ongoing.

82.    Since at least the time it was served with the original complaint, Defendant has also

indirectly infringed by contributing to the infringement of the '291 patent.  Defendant has

contributed to the direct infringement of the '291 patent by its personnel, contractors, and

customers.  The Accused Products have special features that are specially designed to be used in

an infringing way and that have no substantial uses other than ones that infringe one or more

claims of the '291 patent, including, for example, Claim 1.  The special features constitute a

material part of the invention of one or more of the claims of the '291 patent and are not staple

articles of commerce suitable for substantial non-infringing use.

83.    Furthermore, on information and belief, Defendant had a policy or practice of not

reviewing the patents of others, including instructing its employees to not review the patents of

others, and thus was willfully blind of FCS's patent rights.

84.     Defendant's actions were at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendant.

85.     Defendant's infringement of the '291 patent has been willful, intentional, deliberate, or in conscious disregard of FCS's rights under the patent.

86.     FCS has suffered irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  FCS has and will continue to suffer this harm by virtue of Defendant's infringement of the '291 patent.  Defendant's actions have interfered with FCS's ability to license technology.  The balance of hardships favors FCS's ability to commercialize its own ideas and technology.  The public interest in allowing FCS to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

87.     FCS has been damaged as a result of the infringing conduct by Defendant alleged above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 8,494,581**

88.     FCS repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

89.     FCS owns all substantial rights, interest, and title in and to U.S. Patent No. 8,494,581 (the "'581 patent"), including the sole and exclusive right to prosecute this action and enforce the '581 patent against infringers and to collect damages for all relevant times.

90.     The USPTO duly issued the '581 patent on July 23, 2013, after full and fair examination of Application No. 12/547,363 which was filed August 25, 2009.  *See* '581 patent at

1.

91.     The claims of the '581 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of preexisting methods and systems of collecting and communicating field data based on geographical location.

92.     The written description of the '581 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the time of the invention.

93.     FCS or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '581 patent.

94.     Defendant has directly infringed the '581 patent by using, providing, supplying, or distributing the Accused Products.

95.     Defendant has directly infringed, either literally or under the doctrine of equivalents, at least claim 21 of the '581 patent.

96.     For example, upon information and belief, Defendant uses the Accused Products to perform a method that using a handheld device to access an assessment program stored in a memory of a computing device located geographically remote from the handheld device, the assessment program being configured to enable a field assessment in a specific industry; collecting field data associated with the field assessment using the handheld device in response to the assessment program; using the handheld device to determine a geographical location of the handheld device; and communicating the field data collected using the handheld device and the

geographical location of the handheld device to the computing device.

97.     More specifically, Defendant has infringed the claims of the '581 patent as detailed in

Attachment F to the Preliminary Infringement Contentions served on Defendant on March 11,

2024, which are incorporated by reference.

98.     FCS has been damaged as a result of the infringing conduct by Defendant alleged

above.  Thus, Defendant is liable to FCS in an amount that compensates it for such infringements,

which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by

this Court under 35 U.S.C. § 284.

**JURY DEMAND**

99.     FCS hereby requests a trial by jury on all issues so triable by right.

**PRAYER FOR RELIEF**

100.    FCS requests that the Court find in its favor and against Defendant, and that the Court

grant FCS the following relief:

a.  Judgment that one or more claims of each of the Asserted Patents has been infringed,
    either literally or under the doctrine of equivalents, by Defendant or others acting in
    concert therewith;

b.  A permanent injunction enjoining Defendant and its officers, directors, agents,
    servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others
    acting in concert therewith from infringement of the '388 patent, '270 patent and '291
    patent; or, in the alternative, an award of a reasonable ongoing royalty for future
    infringement of the '388 patent, '270 patent and '291 patent by such entities;

c.  Judgment that Defendant account for and pay to FCS all damages to and costs incurred
    by FCS because of Defendant's infringing activities and other conduct complained of

herein;

d.   Judgment that Defendant's infringements of the '388, '270 and '291 patents be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.   Pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award FCS its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: March 11, 2024

Respectfully submitted,

By:/s/ James F. McDonough, III

James F. McDonough, III (GA 117088) *
Jonathan R. Miller (GA507179) *
Travis E. Lynch (GA 162373) *
**Rozier Hardt McDonough, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863, -1962
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

C. Matthew Rozier (CO 46854) *
Kristin M. Whidby (VA 91805) *
**Rozier Hardt McDonough, PLLC**
1500 K Street, 2nd Floor
Washington, DC 20005
Telephone: (404) 779-5305; (202) 217-0575
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**Rozier Hardt McDonough, PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff FLEET CONNECT SOLUTIONS LLC*

*Admitted to the Eastern District of Texas

**List of Supportive Links**

A. U.S. Patent No. 6,429,810, USPTO.GOV, https://patentcenter.uspto.gov/applications/09774547, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6429810

B. U.S. Patent No. 6,549,583, USPTO.GOV, https://patentcenter.uspto.gov/applications/09790429, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6549583

C. U.S. Patent No. 7,742,388, USPTO.GOV, https://patentcenter.uspto.gov/applications/11185665, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7742388

D. U.S. Patent No. 6,647,270, USPTO.GOV, https://patentcenter.uspto.gov/applications/09659074, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/6647270

E. U.S. Patent No. 7,747,291, USPTO.GOV, https://patentcenter.uspto.gov/applications/12546650, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7747291

F. U.S. Patent No. 8,494,581, USPTO.GOV, https://patentcenter.uspto.gov/applications/12547363, https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8494581

G. LKQ CORP., https://www.lkqcorp.com/blog/location/lkq-auto-parts-of-east-texas-whitehouse/

H. Yogi Shivdasani, VP, NA Supply Chain, LKQ Corporation, *Client Testimonials*, DONLEN, https://www.donlen.com (last visited Nov. 29, 2023)

I. FLEET FINANCIALS, https://www.fleetfinancials.com/157524/2017-fleet-executive-of-the-year-award-nominees (last updated July 7, 2017) (last visited Nov. 29, 2023)

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of the above document was filed using this Court's ECF System which caused it to be served by electronic mail upon the attorneys of record.

Dated: <u>March 11, 2024</u>

By: <u>*/s/ James F. McDonough, III*          </u>
James F. McDonough, III